IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID REBERT | : | |
| *Plaintiff*, | : | |
| vs. | : | Civil Action No.:8:20-cv-00067-GLS |
| | : | |
| BROOK FURNITURE RENTAL, INC, et al. | : | |
| | : | |
| *Defendants.* | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DAVID REBERT'S OPPOSITION TO DEFENDANT USA RACK INSTALLATIONS, LLC'S MOTION FOR SUMMARY JUDGMENT**

DAVID REBERT ("Mr. Rebert"), by and through counsel, Ashley E. Strandjord, Benjamin T. Boscolo, and **CHASEN**BOSCOLO, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure together with the Scheduling Order entered in this matter, and as for his Opposition to Defendant USA Rack Installations, LLC's Motion for Summary Judgment in the above-captioned action, and states as follows:

## I. FACTS

Brook Furniture leased a warehouse located at 9950 Business Parkway in Lanham Maryland. See, **Exhibit D**, p. 29:18 – 30:3. Brook Furniture held its inventory in that warehouse. See, **Exhibit D**, p. 32:5-9. The warehouse is approximately fifty-eight thousand square feet (58,000sq.ft.). See, **Exhibit D**, p. 72:12 – 73:3. Brook Furniture's inventory, furniture, was stored upon a large metal racking system. See, *Id*. The warehouse was scheduled to be clear of both Brook Furniture's inventory and the racks upon which the furniture is stored. See, **Exhibit D**, p.31:6-11.

1

At a point prior to August 2016, USA Rack was hired to dismantle the rack system in the warehouse. See, **Exhibit C**, p.30:2-4. Brook Furniture hired JK Moving to help move its inventory from the warehouse onto trucks. See, **Exhibit D**, p.31:15-21.

USA Rack and JK Moving employees were not to be working in close proximity. See, **Exhibit D**, p.72:12 – 73:15. USA Rack's safety policy requires the use of cones to block off the area below which its employees are dismantling racks. See, **Exhibit E**. USA Rack knows there is a danger created by falling objects in the area below its dismantling operation. USA Rack policy requires that its employees use cones approximately twenty to twenty-eight inches (20-28") in height, some with a fluorescent band, to block off the areas below which its employees are dismantling racks. See, **Exhibit C**, p.77:15 – 78:8. An employee of Brook Furniture, Rob Prium, was in charge of communicating with the project managers for both JK Moving and USA Rack and authorizing the companies to be on the premises. See, **Exhibit D**, p.77:14 – 78:3. Brook Furniture maintains JK Moving employees and USA Rack employees were not working near each other during the job. See, **Exhibit D**, p.79:21-80:15.

On August 15, 2016, employees of USA Rack are dismantling racks in the warehouse. See, **Exhibit C**, p.72:8-14 Notwithstanding Mr. Pruim's testimony, USA Rack employees are working directly above employees of JK Moving. See, **Exhibit A**, p.66:16 – 68:4. USA Rack employees create an environment in which there is a risk of debris falls down from the upper levels of the racking system near JK Moving employees. *Id*. On August 15, 2016, no cones or tape or safety devices were placed below the area in which USA employees are dismantling racks. See, **Exhibit B** p.42:14-22. On that day, a hammer falls from an upper level of the racks while they are

being dismantled.  The hammer lands in between two JK Moving employees.  See, **Exhibit A**, p.68:16 – 69:13; **Exhibit B**, p. 34:6 – 35:3.  David Rebert ("Mr. Rebert") is one of the employees. See, **Exhibit A**, p.42:8-15.  Mr. Rebert was almost struck by the falling hammer.  See, **Exhibit A**, p.68:16 – 69:13.  Mr. Rebert informed his supervisor of the falling hammer. *Id*.

An employee of Brook Furniture, Rob Prium, was in charge of communicating with the project manager for both JK Moving and USA Rack and authorizing the companies to be on the premises.  See, **Exhibit D**, p.77:14 – 78:3.  Brook Furniture maintains JK Moving employees and USA Rack employees were not working near each other during the job.  See, **Exhibit D**, p.79:21-80:15.

On August 16, 2016, Mr. Rebert and other employees of JK Moving were working in the warehouse moving furniture.  See, **Exhibit A**, p.60:15-20.  Defendant Brook alleges that this part of the warehouse was away from where employees of USA Rack were providing dismantling services.  See, **Exhibit D**, p.72:12 – 73:15.  Mr. Rebert was working approximately fifteen yards (15yds.) away from any other person in the warehouse.  See, **Exhibit A**, p.74:6-18.  No cones were  present in the area where Mr. Rebert is working.  This is established by the two following  facts.  First, photographs that were taken immediately after the incident  show no cones See, **Exhibit F**, **Exhibit G**, and **Exhibit H**.  Second, Mr. Rebert and Andrew Rupert, another JK Moving employee, testified under oath that they saw no cones.  See, **Exhibit A**, p.78:7 – 14; **Exhibit B**, p.42:14-22.  There is no evidence in the record of any kind to establish that Mr. Rebert knew that there was danger above him on August 16, 2016.

While USA Rack was dismantling the racking system, a safety pin broke "and made the crossbeam come apart." The rack collapsed. See, **Exhibit C,** p.43:19-44:8. As a result, a large steel beam from the racking system falls and strikes Mr. Rebert. See, **Exhibit A**, p.80:9 – 81:16. Mr. Rebert is knocked unconscious. See, **Exhibit A**, p.82:3-9. Mr. Rebert suffers permanent injuries to his head and neck.

Mr. Rebert files a claim with the Virginia Workers' Compensation Commission. A hearing is held on April 3, 2018. See, **Exhibit I**. Mr. Rebert sought authorization for a right L5-S1 hemilaminectomy, discectomy, and foraminotomy. *Id*. A claimant, such as Mr. Rebert, must prove causal connection the injury by a preponderance of the evidence, showing: "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and bodily change." *Hoffman v. Carter*, 50 Va. App. 199, 212, 648 S.E.2d 318, 325 (2007).

At the time of the hearing before the Workers' Compensation Commission, no physician had opined that the August 16, 2016 incident establish a causal connection between the L5-S1 disc injury and the August 16, 2016 injury by accident . See, **Exhibit I**. As a result, the Workers' Compensation Commission denied Mr. Rebert's request for authorization to undergo surgical correction of his low back condition.

On June 19, 2019, well after the hearing before the Virginia Workers' Compensation Commission, Mr. Rebert was evaluated by Dr. Joel Fechter. Dr. Fechter specifically concluded that Mr. Rebert sustained a disc injury at the L5-S1 level as a result of the injury that occurred on August 16, 2016. See, **Exhibit J**.

## II. ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure 56 states that the Court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to <u>any</u> material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986)(emphasis added). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only if there is no genuine issue as to any material fact, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, at 323.

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying specific materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, at 322–25. If the moving party can meet its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In considering a motion for summary judgment, "the court *must draw all reasonable inferences in favor of the nonmoving party*, and i*t may not make credibility determinations*

5

*or weigh the evidence.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)(emphasis added); *see Anderson.* at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson* at 249. The non-moving party "need only present evidence from which a jury <u>might</u> return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Id.* at 257 (emphasis added).

### B. Mr. Rebert Did Not Assume The Risk Of A Steel Beam Falling On His Head

An assumption of the risk defense, when properly asserted, may be grounds for entering summary judgment for a defendant, or otherwise finding that the defense has been established as a matter of law. However, this is only true when "the undisputed facts permit but one reasonable determination," namely, that the plaintiff has assumed the risk as a matter of law. *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 110 (2011), *Hooper v. Mougin,* 263 Md. 630, 635, 284 A.2d 236, 239 (1971); *accord Chalmers v. Willis,* 247 Md. 379, 385, 231 A.2d 70, 73 (1967).

Maryland has adopted a subjective standard with respect to the plaintiff when faced with an assumption of the risk defense. The *Poole* Court indicated:

> There is, however, another distinction between the doctrines which has not heretofore been fully explained in Maryland, namely that the standard for imputing knowledge to a plaintiff under assumption of the risk is:
>
> [I]n theory at least, a subjective one, geared to the particular plaintiff and his situation, rather than that of the reasonable person of ordinary prudence who appears in contributory negligence. If, because of age or lack of information or experience, he does not

6

comprehend the risk involved in a known situation,
he will not be taken to consent to assume it.

*Id*. at 111-112.   The subjective standard was explored further in *C & M* Builders where the Court stated "the party must have known and appreciated the risk either because it is not credible that a *similarly situated person* would not have done so, or because the risk was so obvious that it could not have been encountered unwittingly." 420 Md. at 295, 22 A.3d at 882.

The issue of assumption of the risk rests upon the plaintiff's subjective knowledge. Because the focus is on what the plaintiff actually knew, understood and appreciated the issue is ordinarily left to the jury to resolve. *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 112 (2011).

### i.     More than One Determination May be Reached from the facts

Defendant USA Rack contends Mr. Rebert stepped into an area of the warehouse that was flanked by cones, twenty (20) to twenty-eight (28) inches in height, some with fluorescent tape. **Exhibit C**, p.77:15 – 78:8.  This contention is based on the testimony of an interested witness, Mr. Miguel Suarez Hernandez, the corporate representative of Defendant USA Rack. *Id*. Mr. Suarez was not on site on the date of the subject incident. See, **Exhibit C**, p.28:10-15.  Mr. Suarez relied solely on information fed to him from his on-site supervisor, Pascual Hernandez.  See, **Exhibit C**, p.38:8 – 38:4.  Furthermore, Mr. Suarez relied upon a drawing indicating the placement of cones on August 16, 2016 that he drew a few weeks prior to his deposition.  See, **Exhibit G**, p.35:13 – 36:7; **Exhibit K.**

However, multiple photographs from the date of the incident show **no cones. See, Exhibits F, G, and H.**  Mr. Rebert testified during his deposition:

7

> Q: All right. Were the people that were
> disassembling the racks, did they mark
> off their work area with any orange cones
> or tape or anything like that?
> A: No  Seemed to be the only thing they
> marked it with was falling debris and
> their – the gear that they brought to work
> with, like the hammer.  There was nothing
> marked.

**Exhibit A**, p.78: 7-14.  Non-party witness Andrew Rupert was also asked about the presence of cones at the subject warehouse.

> Q: Did you see the racking company put up
> any caution cones, orange cones or tape
> or anything to try to block off the area where
> they were working?
> A: No, sir.
> Q: Did you see any cones or tapes or any
> safety devices used at all during that
> week leading up to the accident?
> A: No, sir.

**Exhibit B**, p.42:14-22.

Simply put the existence of cones in the area at issue creates a material fact in dispute.  There exists more than one "reasonable determination" that can be made as to whether Mr. Rebert assumed the risk in this situation.  Therefore, summary judgment is not appropriate and must not be entered in favor of Defendant USA Rack.

### ii. The Court Must Apply A Subjective Standard When Determining Whether Assumption of the Risk Is a Valid Defense

Defendant USA Rack's contention that a falling hammer nearby Mr. Rebert is worthy of an assumption of the risk defense is untenable. At its core, the approach signals Defendant USA Rack has permitted its employees to operate recklessly and without due care for safety for others near its jobsites and are therefore, is absolved

from *any* liability because Defendant USA Rack has a reputation for acting recklessly and anybody in the vicinity of its operations should know and appreciate the risk.

Defendant USA Rack's position relies on Mr. Rebert and Mr. Rupert's[1] observations of "tools, objects and debris falling to the ground in close proximity to where they had ben working in the days and hours leading up to the occurrence." See, Defendant USA Rack's Motion for Summary Judgment at pg. 15. The focus is misplaced, as at the time of the occurrence, Mr. Rebert was not working in the same area as he had been when making these observations. See, **Exhibit A**, p.74:6 - 75:1. The testimony of Mr. Rebert is clear when he indicated he had been moved away from the area where he previously observed falling tools. *Id*; **Exhibit A**, p.73:5-20. In fact, Mr. Rebert was not within fifteen yards (15yds.) of any other person in the warehouse at the time of the incident. See, **Exhibit A**, p.74:16-18. "So – but yeah, I was within 15 yards of another human. Closest person would be my co-workers, which was maybe 20 yards to my right, 20 yards to the left and directly behind me." See, **Exhibit A**, p.75:12-19.

Taking Maryland's subjective standard, and well-established precedent, into account, what Mr. Rebert actually "knew, understood and appreciated" is "ordinarily" left to the jury. Here, there exists no lock tight evidence of Mr. Rebert's subjective knowledge and appreciation of the risk that a steel beam might fall onto him while working in a different area of the warehouse. It cannot be said, as a matter of law, that Mr. Rebert knew of, understood, and appreciated the risk of a large steel beam falling on his body from approximately fifteen yards (15yds.) away, in a different area of the warehouse, and so drastically different than his prior observations. *Id*.

---

[1] Andrew Rupert is a non-party witness with whom Mr. Rebert worked.

Wherefore, it is respectfully submitted that Defendant USA Rack's Motion for Summary Judgment is denied with respect to the assumption of the risk defense.

### C. Defendant USA Rack Owed A Duty to Mr. Rebert And Others In the Warehouse

Negligence ordinarily is a question of fact, and meager evidence of negligence is sufficient to carry the case to the jury. *Giant Food, Inc. v. Scherry*, 51 Md. App. 586, 444 A.2d 483 (1982); *McSlarrow v. Walker, 56 Md. App. 151, 467 A.2d 196 (1983)*, cert. denied, 299 Md. 137, 472 A.2d 1000 (1984). But it must be more than a surmise, possibility, or conjecture, *Smith v. Warbasse*, 71 Md. App. 625, 526 A.2d 991 (1987); *Schear v. Motel Mgmt. Corp.*, 61 Md. App. 670, 487 A.2d 1240 (1985), (i.e., it must permit an ordinary intelligent mind to draw a rational conclusion in support of the right to recover). *Dalmo Sales of Wheaton, Inc. v. Steinberg*, 43 Md. App. 659, 407 A.2d 339 (1979).

In any negligence matter, the plaintiff shoulders the burden of proving "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty; 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of that duty." *Davis v. Regency Lane, LLC*, 249 Md. App. 187, 205-206 (2021)(citations omitted). The plaintiff must offer more than a "mere scintilla of evidence, amounting to no more than surmise, possibility, on conjecture that such other party has been guilty of negligence, but such evidence must be legal probative force and evidentiary value." *Id*., *Shafer v. Interstate Auto. Ins. Co.*, 160 Md. App. 358, 376 (2005)(citations omitted).

A duty is defined as an obligation "to conform to a particular standard of conduct toward another." *Davis* at 207. Maryland has long held that when the question of whether a legal duty is dependent upon a dispute of material fact, the facts should be

determined by a jury. *Corinaldi v. Columbia Courtyard, Inc.*, 162 Md. App. 207, 218 (2005). At its core, the determination of whether a duty exists represents a policy choice of whether the specific plaintiff is entitled to protection from the acts of the defendant." *Gourdine v. Crews*, 405 Md. 722, 745, 955 A.2d 769, 783 (2008).

In the case at hand, Defendant USA Rack had written policies to block off the area in which its employees were working. "Use the safety cones or traffic cones in every single work that requires and included [sic] working with other contractors on site." See, **Exhibit E**. Miguel Suarez Hernandez, the corporate representative of Defendant USA Rack testified:

> Q: You mentioned that Mr. Pasqual Suarez told you that he told his men to use orange safety cones, and that they were used on the day in question. Where you familiar with the type of safety cones that Mr. Pasqual said were used at the warehouse on the day of the accident?
> A. Yes.
> Q. Can you describe for us what those cones looked like and, if you know, how many safety cones were used on the site on the day of the accident by USA Rack?
> A. Yes. The cones are orange and the height is between 18 and 20 – no, I'm sorry, between 20 and 28 inches tall. Are the same ones used in the construction zones. The color is orange, and around – well, some of them around have a fluorescent line.
> Q. And did Mr. Pasqual tell you how many cones were used or where in use at the time of the accident and where they were placed?
> A. Yes. We used about six or eight cones, and they were placed in the area where we were working.
> Q. And what was the purpose for placing the cones in the area where you were working?
> A. The purpose is to make sur that no other person that is not part of USA Rack comes into that area, because it's a construction area.

> Q. Did Mr. Pasqual Suarez tell you that when this piece of rack fell and hit the equipment and then hit Mr. Rebert, did that occur within the area marked off with these orange cones?
> A. Correct. It was inside the area that was marked.

**Exhibit C**, p.77: 15 - 79: 2.

It is abundantly clear that through its own policies and/or Safety Rules, Defendant USA Rack had a duty to use cones to protect others on jobsites from injury or death. See, **Exhibit E**. It is because Defendant USA Rack had these rules that it *ipso facto* had a duty "to conform to a particular standard of conduct toward another." *Davis* at 207.

There exists a genuine issue of material fact as to whether Defendant USA Rack actually placed cones to warn others on the jobsite on August 16, 2016. A representative of Defendant USA Rack indicated that cones were placed on this jobsite. *Id*. Mr. Rebert and Mr. Rupert testified there were no cones present on the jobsite. See, **Exhibit A**, p.78:7 – 14; **Exhibit B** p.42:14-22. At least three (3) photographs of the location of the injury fail to portray any scintilla of cones in the immediate area of Mr. Rebert's injury. See, **Exhibits F, G,** and **H**.

Because Defendant USA Rack had a duty to conform to a particular standard, setting out cones to warn others of its operations, it owed a duty to Mr. Rebert.

Wherefore, it is respectfully requested the Defendant USA Rack's Motion for Summary Judgment is denied.

### D. Claims for Negligent Hiring, Negligent Training, and Negligent Supervision

Mr. Rebert respectfully withdraws his claims for negligent hiring, negligent training, and negligent supervision in this matter.

### E. Collateral Estoppel is Inappropriate

Collateral estoppel is a form of issue preclusion. The function of the doctrine of collateral estoppel is to "avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Colandrea v. Wilde Lake Cmty. Assoc., Inc.*, 361 Md. at 387 (2000). The United States Supreme Court discussed issue preclusion at length in *Parklane Hosiery Co. v. Shore* and differentiated the types of issue preclusion, specifically pontificating: "[u]nder the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues *actually litigated* and *necessary to the outcome* of the first action." 439 U.S. 322, 99 (1979) (emphasis added).

As indicated in *Sedlack v. Braswell Services Group, Inc.*, in order for collateral estoppel to apply, the proponent must establish:

> (1) the issue sought to be precluded is identical to one previously litigated;
> (2) the issue must have been *actually determined* in the prior proceeding;
> (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding;
> (4) the prior judgment must be final and valid; and
> (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

134 F.3dc 219, 224 (1998) quoting *Ramsey v. INS*, 14 F.3d 206, 210 (4th Cir. 1994) (emphasis added).

Arising out of the incident at hand, Mr. Rebert also made a claim through the Virginia Workers' Compensation Commission. During the course of his Workers'

13

Compensation matter, a hearing was held to obtain authorization for payment of his back surgery.  See, **Exhibit I**.

Workers' Compensation matters require claimants to prove causation in connection with a claim.  A claimant before the Virginia Workers' Compensation Commission bears the burden of proving a compensable injury by accident. In order to prove an injury by accident, a claimant must demonstrate by a preponderance of the evidence "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) ***an obvious sudden mechanical or structural change in the body***; and (4) a causal connection between the incident and bodily change." *Hoffman v. Carter*, 50 Va. App. 199, 212, 648 S.E.2d 318, 325 (2007) (citing *Chesterfield Cnty. v. Dunn*, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990)) (emphasis added).

In a personal injury matter, a plaintiff must prove that his or her injuries:

> result from and be a reasonably foreseeable consequence of the defendant's negligence. [There may be more than one cause of an injury, that is, several negligent acts may work together to cause the injury.  Each person whose negligent act is a substantial factor in causing an injury is responsible.]

MPJI-CV 19:10 (5th Ed.).  In *Peterson v. Underwood*, the Court noted that proximate cause ultimately involves a conclusion that someone is legally responsible for the consequences of an act or omission, noting that the determination is subject to considerations of fairness or social policy as well as mere causation.  258 Md. 9, 264 A.2d 851 (1970).

Mr. Rebert does not seek to "re-litigate the causation issue in this action," contrary to Defendant USA's assertion.  See, Defendant USA Rack's Motion for

14

Summary Judgment at pg. 22. Through his Virginia Workers' Compensation matter, Mr. Rebert was held to a different causation standard regarding his back surgery. Specifically, the Deputy Commissioner held:

> None of the claimant's physicians has causally related the need for lumbar disc surgery to the claimant's August 16, 2016 work injury. The claimant's primary treating physician, Dr. Kevin Culbert, indicated that he is unable to relate the claimant's lower back pain and treatment, including the surgical recommendation of Dr. Ecklund, to the claimant's August 16, 2016 work injury. Similarly, Dr. Corey Wallach and Dr. Donald Hope are unable to establish a causal relationship between the need for surgical intervention and the August 16, 2016 work injury.

**Exhibit I**.

The finding made in Mr. Rebert's Workers' Compensation matter is not an "identical" matter to the case at hand, nor was it "actually litigated." The case at bar does not require Mr. Rebert to prove "an obvious sudden mechanical or structural change in the body" in pursuit of his personal injury matter. He is beholden to that standard as a claimant before the Virginia Workers' Compensation Commission. In the instant matter, Mr. Rebert must prove that this incident was the proximate cause of his back injury and resulting surgery. As there are variances in the two causation standards discussed above, it cannot be said that Mr. Rebert's workers' compensation matter is "identical" to his pending personal injury matter, nor was it "actually litigated." As the workers' compensation matter was not "actually litigated," nor is it identical to the case at bar, collateral estoppel is not an appropriate bar to his claims.

Furthermore, there is additional medical evidence, obtained after the April 3, 2018 Virginia Workers' Compensation Commission hearing that clearly shows a causal

15

connection between the August 16, 2016 incident and the need for Mr. Rebert's right L5-S1 L5-S1 hemilaminectomy, discectomy, and foraminotomy.  See, **Exhibit J**.

It is for these reasons that it is respectfully requested that Defendant USA Rack's Motion for Summary Judgment is denied.

### F.  **Lost Wages, Future Lost Earnings**

Mr. Rebert respectfully withdraws his claims for lost wages and future lost earning capacity in this matter.

### G. **Mr. Rebert May Rely on *Res Ipsa Loquitor***

Pleading specific acts of negligence in a complaint does not necessarily preclude reliance upon *res ipsa loquitur* at trial. *Holzhauer v. Saks & Co.*, 346 Md. 328, 697 A.2d 89 (1997); *Joffre v. Canada Dry Ginger Ale, Inc.*, 222 Md. 1, 158 A.2d 631 (1960).

Although Mr. Rebert pled specific allegations against both Defendant USA Rack and Defendant Brook in connection with the above-captioned action, Mr. Rebert is not precluded from asserting the doctrine of *res ipsa loquitor* at trial.  As Mr. Rebert may raise the *res ipsa loquitor* doctrine at the time of trial, the issue is premature to be disposed of summarily.

Wherefore,  it is respectfully submitted that Defendant USA Rack's Motion for Summary Judgment is denied.

### III. CONCLUSION

WHEREFORE, Mr. Rebert respectfully requests that this Honorable Court deny Defendant USA Rack Installations, LLC's Motion for Summary Judgment.

**A HEARING IS REQUESTED ON THIS MOTION**.

Respectfully submitted,

By:    */s/ Benjamin T. Boscolo*
      Benjamin T. Boscolo (CPF: 870101008)
      bboscolo@chasenboscolo.com
      *Counsel for Mr. Rebert*

By:    */s/ Ashley E. Strandjord*
      Ashley E. Strandjord (CPF: 1912050019)
      **CHASEN**BOSCOLO
      7852 Walker Drive, Suite 300
      Greenbelt, MD 20770
      Tel.: (301) 220-0050
      Fax: (301) 474-1230
      astrandjord@chasenboscolo.com
      *Counsel for Mr. Rebert*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAVID REBERT | : | |
| *Plaintiff*, | : | |
| vs. | : | Civil Action No.:8:20-cv-00067-GLS |
| | : | |
| BROOK FURNITURE RENTAL, INC, et al. | : | |
| *Defendants.* | : | |

**INDEX OF EXHIBITS IN SUPPORT OF DAVID REBERT'S OPPOSITION TO DEFENDANT BROOK FURNITURE RENTAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

Exhibit A – Deposition Testimony of Mr. David Rebert

Exhibit B – Deposition Testimony of Mr. Andrew Rupert

Exhibit C – Deposition Testimony of USA Rack Installations, LLC, corporate representative

Exhibit D – Deposition Testimony of Brook Furniture Rental, Inc., corporate representative

Exhibit E – Policies of USA Rack Installations, LLC

Exhibit F – Photograph

Exhibit G – Photograph

Exhibit H – Photograph

Exhibit I – April 3, 2018 Opinion and Order of the Virginia Workers' Compensation Commission

Exhibit J – Report of Dr. Joel Fechter

Exhibit K – Drawing of Miguel Suarez Hernandez

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 3, 2021 a copy of the foregoing pleading was electronically filed with the CM/ECF system and e-mailed to:

Steven J. Parrott, Esq.
DeCaro Doran Siciliano Gallagher & DeBlasis, LLP
17251 Melford Blvd., Suite 200
Bowie, MD 20715
(301) 352-4991
sparrott@decarodoran.com
*Counsel for Defendant USA Rack Installations*

Courtney D. Thornton, Esq.
100 South Charles Street, Suite 1101-Tower II
Baltimore, MD 21201
(410) 752-0575
Courtney.thornton01@libertymutual.com
*Counsel for Defendant Brook Furniture Rental, Inc.*

                                                            */s/ Ashley E. Strandjord*
                                                           Ashley E. Strandjord