IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID REBERT | : | |
| *Plaintiff*, | : | |
| vs. | : | Civil Action No.: 8:20-cv-00067-GLS |
| | : | |
| BROOK FURNITURE RENTAL, INC, et al. | : | |
| | : | |
| *Defendants.* | : | |

## DAVID REBERT'S AMENDED OPPOSITION TO DEFENDANT BROOK FURNITURE RENTAL, INC.'S MOTION FOR SUMMARY JUDGMENT

DAVID REBERT ("Mr. Rebert"), by and through counsel, Ashley E. Strandjord, Benjamin T. Boscolo, and **CHASEN**BOSCOLO, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure together with the Scheduling Order entered in this matter, and as for his Opposition to Defendant Brook Furniture Rental, Inc.'s Motion for Summary Judgment in the above-captioned action, and states as follows:

1. There are genuine issues of material fact;
2. Defendant Brook Furniture Rental, Inc. is not entitled to summary judgment as a matter of law.

WHEREFORE, Mr. Rebert prays that Defendant Brook Furniture Rental, Inc.'s Motion for Summary Judgment is denied.

Respectfully submitted,

By: /s/ Ashley E. Strandjord
Benjamin T. Boscolo (05643)
Ashley E. Strandjord (21238)
7852 Walker Drive, Suite 300
Greenbelt, Maryland 20770
(301) 220-0050
Fax (301) 474-1230
bboscolo@chasenboscolo.com
astrandjord@chasenboscolo.com
*Counsel for Mr. Rebert*

## **GROUNDS AND AUTHORITIES**

1. Federal Rule of Civil Procedure 56(b)

2. Attached Memorandum of Points and Authorities

/s/ Ashley E. Strandjord

<u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that on May 26, 2021 a copy of the foregoing pleading was electronically filed with the CM/ECF system and e-mailed to:

Steven J. Parrott, Esq.
DeCaro Doran Siciliano Gallagher & DeBlasis, LLP
17251 Melford Blvd., Suite 200
Bowie, MD 20715
(301) 352-4991
sparrott@decarodoran.com
*Counsel for Defendant USA Rack Installations*

Courtney D. Thornton, Esq.
100 South Charles Street, Suite 1101-Tower II
Baltimore, MD 21201
(410) 752-0575
Courtney.thornton01@libertymutual.com
*Counsel for Defendant Brook Furniture Rental, Inc.*

            */s/ Ashley E. Strandjord*_____
            Ashley E. Strandjord

# N THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID REBERT | : | |
| *Plaintiff*, | : | |
| vs. | : | Civil Action No.:8:20-cv-00067-GLS |
| | : | |
| BROOK FURNITURE RENTAL, INC, et al. | : | |
| | : | |
| *Defendants.* | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DAVID REBERT'S OPPOSITION TO DEFENDANT BROOK FURNITURE RENTAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

DAVID REBERT ("Mr. Rebert"), by counsel, Ashley E. Strandjord, Benjamin T. Boscolo, and **CHASEN**BOSCOLO, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and the Scheduling Order entered in this matter opposes Defendant Brook Furniture Rental, Inc.'s ("Defendant Brook") Motion for Summary Judgment in the above-captioned action, and states as follows:

## I.    FACTS

Brook Furniture leased a warehouse located at 9950 Business Parkway in Lanham Maryland. See, **Joint Exhibit 13**, p. 29:18 – 30:3. Brook Furniture held its inventory in that warehouse. See, **Joint Exhibit 13**, p. 32:5-9. The warehouse is approximately fifty-eight thousand square feet (58,000sq.ft.). See, **Joint Exhibit 13**, p. 72:12 – 73:3. Brook Furniture's inventory, furniture, was stored upon a large metal racking system. See, *Id*. The warehouse was scheduled to be clear of both Brook Furniture's inventory and the racks upon which the furniture is stored. See, **Joint Exhibit 13**, p.31:6-11.

At a point prior to August 2016, USA Rack was hired to dismantle the rack system in the warehouse. See, **Joint Exhibit 12**, p.30:2-4. Brook Furniture hired JK Moving to help move its inventory from the warehouse onto trucks. See, **Joint Exhibit 13**, p.31:15-21.

USA Rack and JK Moving employees were not to be working in close proximity. See, **Joint Exhibit 13**, p.72:12 – 73:15. USA Rack's safety policy requires the use of cones to block off the area below which its employees are dismantling racks. See, **Joint Exhibit 15**. USA Rack knows there is a danger created by falling objects in the area below its dismantling operation. USA Rack policy requires that its employees use cones approximately twenty to twenty-eight inches (20-28") in height, some with a fluorescent band, to block off the areas below which its employees are dismantling racks. See, **Joint Exhibit 12**, p.77:15 – 78:8. An employee of Brook Furniture, Rob Prium, was in charge of communicating with the project managers for both JK Moving and USA Rack and authorizing the companies to be on the premises. See, **Joint Exhibit 13**, p.77:14 – 78:3. Brook Furniture maintains JK Moving employees and USA Rack employees were not working near each other during the job. See, **Joint Exhibit 13**, p.79:21-80:15.

On August 15, 2016, employees of USA Rack are dismantling racks in the warehouse. See, **Joint Exhibit 12**, p.72:8-14 Notwithstanding Mr. Pruim's testimony, USA Rack employees are working directly above employees of JK Moving. See, **Joint Exhibit 2**, p.66:16 – 68:4. USA Rack employees create an environment in which there is a risk of debris falls down from the upper levels of the racking system near JK Moving employees. *Id*. On August 15, 2016, no cones or tape or safety devices were placed

5

below the area in which USA employees are dismantling racks. See, **Joint Exhibit 1** p.42:14-22. On that day, a hammer falls from an upper level of the racks while they are being dismantled. The hammer lands in between two JK Moving employees. See, **Joint Exhibit 2**, p.68:16 – 69:13; **Joint Exhibit 1**, p. 34:6 – 35:3. David Rebert ("Mr. Rebert") is one of the employees. See, **Joint Exhibit 2**, p.42:8-15. Mr. Rebert was almost struck by the falling hammer. See, **Joint Exhibit 2**, p.68:16 – 69:13. Mr. Rebert informed his supervisor of the falling hammer. *Id*.

On August 16, 2016, Mr. Rebert and other employees of JK Moving were working in the warehouse moving furniture. See, **Joint Exhibit 2**, p.60:15-20. Defendant Brook alleges that this part of the warehouse was away from where employees of USA Rack were providing dismantling services. See, **Joint Exhibit 13**, p.72:12 – 73:15. Mr. Rebert was working approximately fifteen yards (15yds.) away from any other person in the warehouse. See, **Joint Exhibit 2**, p.74:6-18. No cones were present in the area where Mr. Rebert is working. This is established by the two following facts. First, photographs that were taken immediately after the incident show no cones See, **Joint Exhibit 16**, **Joint Exhibit 17**, and **Joint Exhibit 18**. Second, Mr. Rebert and Andrew Rupert, another JK Moving employee, testified under oath that they saw no cones. See, **Joint Exhibit 2**, p.78:7 – 14; **Joint Exhibit 1**, p.42:14-22. There is no evidence in the record of any kind to establish that Mr. Rebert knew that there was danger above him on August 16, 2016.

While USA Rack was dismantling the racking system, a safety pin broke "and made the crossbeam come apart." The rack collapsed. See, **Joint Exhibit 12,** p.43:19-44:8. As a result, a large steel beam from the racking system falls and strikes

Mr. Rebert.  See, **Joint Exhibit 2**, p.80:9 – 81:16.  Mr. Rebert is knocked unconscious. See, **Joint Exhibit 2**, p.82:3-9.  Mr. Rebert suffers permanent injuries to his head and neck.

Mr. Rebert files a claim with the Virginia Workers' Compensation Commission.  A hearing is held on April 3, 2018.  See, **Joint Exhibit 8**.  Mr. Rebert sought authorization for a right L5-S1 hemilaminectomy, discectomy, and foraminotomy.  *Id*.  A claimant, such as Mr. Rebert, must prove causal connection the injury by a preponderance of the evidence, showing: "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and bodily change." *Hoffman v. Carter*, 50 Va. App. 199, 212, 648 S.E.2d 318, 325 (2007).

At the time of the hearing before the Workers' Compensation Commission, no physician had opined that the August 16, 2016 incident establish a causal connection between the L5-S1 disc injury and the August 16, 2016 injury by accident .  See, **Joint Exhibit 8**.  As a result, the Workers' Compensation Commission denied Mr. Rebert's request for  authorization to undergo surgical correction of his low back condition.

On June 19, 2019, well after the hearing before the Virginia Workers' Compensation Commission, Mr. Rebert was evaluated by Dr. Joel Fechter.  Dr. Fechter specifically concluded that Mr. Rebert sustained a disc injury at the L5-S1 level as a result of the injury that occurred on August 16, 2016.  See, **Joint Exhibit 19**.

## II.    ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure 56 states that the Court may only grant a motion for

summary judgment if "the movant shows that there is no genuine dispute as to <u>any</u> material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986)(emphasis added). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only if there is no genuine issue as to any material fact, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, at 323.

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying specific materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, at 322–25. If the moving party can meet its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In considering a motion for summary judgment, "the court *must draw all reasonable inferences in favor of the nonmoving party*, and <u>it</u> *may not make credibility determinations or weigh the evidence*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)(emphasis added); *see Anderson.* at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter

8

but to determine whether there is a genuine issue for trial." *Anderson* at 249. The non-moving party "need only present evidence from which a jury <u>might</u> return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Id.* at 257 (emphasis added).

### a. Defendant Brook Owed Mr. Rebert An Ordinary Duty of Care

It has long been held that a plaintiff must establish the four elements of a premises liability action. These elements were spelled out in <u>Joseph v. Bozzuto Mgmt., Co.</u>, 173 Md. App. 305, 314 (2007). "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) *that the defendant breached that duty*, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of that duty." <u>Id</u>. (emphasis original).

To determine the duty owed by the defendant to the plaintiff in a premises matter, one must determine the status of the plaintiff at the time of the entrance onto the premises. <u>Id</u>., at 309. A determination must be made as to whether the plaintiff is: 1) an invitee; 2) a licensee/social guest; or 3) trespasser. <u>Howard Cty. Bd. of Educ. V. Cheyne</u>, 99 Md. App. 150, 155 (1994).

The highest duty of care to an entrant is owed to an invitee, it is the duty to "use reasonable and ordinary care to keep the premises safe for the invitee and to <u>protect</u> the invitee from injury caused by an <u>unreasonable risk</u> which the invitee, by exercising ordinary care for the invitee's own safety will not discover." <u>Macias v. Summit Mgmt., Inc.</u>, 243 Md. App. 294, 317 (2019) (emphasis added). An invitee is "invited or

permitted to enter or remain on another's property for purposes connected with or related to the owner's business." Bramble v. Thompson, 264 Md. 518, 521 (1972).

Under the law, an occupier of a premises must:

> not only use care not to injure the visitor by negligent activities, and warn him of hidden dangers known to the occupier, but he must also act reasonably to inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers *which are foreseeable* from the arrangement or use of the property.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388-389 (1997) citing W. Page Keeton, et. al., Prosser and Keeton on the Law of Torts, § 61, at 425–26 (5th ed.1984) (footnotes omitted).

The breach by the defendant occurs when it fails to discharge the duty owed. Hartford Ins. Co. v. Manor Inn of Bethesda, Inc., 335 Md. 135, 147-48 (1994). A defendant will be found to have breached the duty of care to an invitee if the defendant: 1) had control over the dangerous or defective condition; 2) knew or should have know of the dangerous or defective condition; and 3) the "harm suffered was a foreseeable result of that condition." Hansberger, 229 Md. App. 1 at 21.

Notice of the dangerous or defective condition can be either actual or constructive notice. Recently, in Deering Woods Condominium Ass'n v. Spoon, the Court reiterated a long passage from *Moore v. American Stores Co.*, 169 Md. 541 (1936), with some of the factors bearing on constructive notice.

> It is not necessary that there be proof that the inviter had actual knowledge of the conditions creating the peril; <u>it is enough if it appear that it could have discovered them by the exercise of ordinary care, so that, if it is shown</u>

10

> that the conditions have existed for a time sufficient to
> permit one, under a duty to know of them, to discover
> them, had he exercised reasonable care, his failure to
> discover them may in itself be evidence of negligence
> sufficient to charge him with knowledge of them. What
> will amount to sufficient time depends upon the
> circumstances of the particular case, and involves
> consideration of the nature of the danger, the number
> of persons likely to be affected by it, the diligence
> required to discover or prevent it, opportunities and means
> of knowledge, the foresight which a person of ordinary
> care and prudence would be expected to exercise under
> the circumstances, and the foreseeable consequences
> of the conditions.

*Id.* at 551, 182 A. at 440 (citations omitted) (emphasis added). Here, there is both constructive and actual notice of the necessity for cones to be placed in the area below which USA Rack was providing dismantling services. First, USA Rack's policy requires it. The clear inference created by the existence of this policy is the knowledge that there exists danger to people working below the area where racks are being disassembled. Second, there is actual notice of this risk that results from the incident ***the day before this incident***, in which a hammer fell from USA Rack's work area while they providing dismantling service. It was Defendant Brooks' duty to make sure that each co-subcontractors knew what work was being done, when it was being done and where it was being done.

### i. Defendant Brook Controlled the Warehouse Premises

Defendant Brook leased the warehouse at issue. See, **Joint Exhibit 13**, p.29:18 – 30:3. Defendant Brook had employees working out of the warehouse in Lanham, Maryland. See, **Joint Exhibit 13**, p.43:15 – 44:2. Defendant Brook had team members and employees present at the warehouse on August 16, 2016. See, **Joint Exhibit 13**, p.62:1-9. Defendant Brook had communications with other contractors in

the warehouse during the time frame in which its inventory was being moved.  See, **Joint Exhibit 13**, p.62:21 – 63:11.

Although Defendant Brook was not the owner of the warehouse located at 9950 Business Parkway in Lanham, Maryland, it had control over it as the lessor.  See, **Joint Exhibit 13**, 29:13 – 30:3.  Defendant Brook had control over the entire premises and had a duty to "act reasonably to inspect the premises to discover possible dangerous conditions of which [an invitee] does not know, and take reasonable precautions to protect the invitee from dangers *which are foreseeable* from the arrangement or *use of the property*." *Tennant*, supra (emphasis added).

Defendant Brook had an employee, Rob Prium, who was in charge of authorizing others to be on its premises during this warehouse move.  See, **Joint Exhibit 13**, p.77:14 – 78:3.

> Q: Was there anyone from Brook Furniture who specifically would have directed JK Moving to work in one portion of the warehouse and the raking [sic] company to work in the other?
> MS. THORNTON: Objection to form.  You may answer.
> A: Yes.
> Q: Who was that person?
> A: Rob Prium.

**Joint Exhibit 13**, p.96:8-16.  Furthermore, Defendant Brook indicated that Defendant USA Rack and JK Moving employees were not to be working in close proximity to each other at this jobsite.  See, **Joint Exhibit 13**, p.79:2-80:15.  Furthermore, Defendant Brook had an employee who was responsible to stay in communication with the two vendors on its premises, Defendant USA Rack and JK Moving.  See, **Joint Exhibit 13**,

12

p.77:20 78:3.  Defendant USA Rack indicated that it was taking direction from Defendant Brook regarding where in the warehouse its employees should be working and gave Defendant USA Rack permission to begin dismantling the racks.  See, **Joint Exhibit 12**, p.56:17 – 57:5; 81:8-14.

In this instance, Defendant Brook did not act reasonably to inspect its premises. Defendant Brook, through its corporate representative, testified it had an employee who was in charge of ensuring the racking and moving operations were distanced from each other in the warehouse.  *Id*.  Defendant Brook had a duty to exercise ordinary care in this instance.  *Moore v. American Stores Co.*, 169 Md. 541, 551 (1936).  Defendant Brook, through its employees, did not exercise ordinary care, and it did not prevent the racking company, Defendant USA Rack, and the moving company, JK Moving, from working in the same area of the warehouse despite having a point person to prevent that from happening.  Defendant Brook, through its employees, did not exercise ordinary care in delaying the dismantling of the racking system in the warehouse until the furniture movers had completed their assignment.  Defendant Brook did not have a point person who was present on the warehouse at all times on August 16, 2016.  See, **Joint Exhibit 13**, p.76:8-13.

There exists factual evidence as to the duty owed by Defendant Brook to Mr. Rebert and it is for the reasons stated above that it is respectfully submitted that Defendant Brook's Motion for Summary Judgment is denied.

    **ii.**     **Defendant Brook Had Actual and Constructive Knowledge Of The Dangerous Conditions On Its Premises**

Defendant Brook was engaged in the oversight of the moving of its inventory out of the 9950 Business Parkway warehouse in Lanham, Maryland prior to August 16,

2016. In fact, JK Moving had been on site for a few days prior to the incident at issue. See, **Joint Exhibit 2**, p:55:16-22. Prior to Mr. Rebert's injuries, debris and tools were raining down off the racks near others workers below. See, **Joint Exhibit 2**, p.68:16 – 69:13.

Not only were tools falling in close proximity to other workers in this warehouse leased by Defendant Brook, but there were extended periods of time in which the employees of the racking company were working directly above or in close proximity to the employees of JK Moving. See, **Joint Exhibit 2**, p.68:16 – 69:13; **Joint Exhibit 1**, p.34:6 – 35:3; p.40:20 – 41:12. There were a lot of people in the warehouse location moving about at a rapid speed. See, **Joint Exhibit 12**, p.81:15 – 82:3. Defendant Brook indicated it had employees on site who were in charge of communicating with the project managers of the other companies also working in the warehouse. See, **Joint Exhibit 13**, p.74: 21 – 75:15; p.77:14 – 78:3

There is no question that the dangerous conditions existed for a sufficient period of time in which Defendant Brook "under a duty to know of them, to discover them, had [it] exercised reasonable care, [its] failure to discover them may in itself be evidence of negligence sufficient to charge [it] with knowledge of them." <u>Moore v. American Stores Co</u>., 169 Md. 541, 551 (1936). This job had been going on for at least two (2) days prior to Mr. Rebert's injury on August 16, 2016.

Furthermore, Defendant Brook had a person who was in charge of authorizing both Defendant USA Rack and JK Moving to be on its premises. Defendant Brook had a person with whom both Defendant USA Rack and JK Moving communicated regarding the clearing of the warehouse, yet this employee, Rob Prium, although not

14

consistently at the warehouse location, was present.  Together with the authority vested in Rob Prium, Defendant Brook had constructive knowledge of the jobsite, the amount of people and vendors on its leased premises, and the activities performed.  Defendant Brook had constructive knowledge of a dangerous or defective condition on its premises when it allowed Defendant USA Rack and JK Moving to work in the same area(s) of a fifty-eight thousand square foot (58,000sq.ft.) warehouse.

Wherefore, for the above reasons, it is respectfully requested that this Honorable Court deny Defendant Brook's Motion for Summary Judgment.

### iii. No Expert Testimony Is Required To Prove Standard of Ordinary Care

Defendant Brook's owed a duty to exercise ordinary care on August 16, 2016, including inspecting its premises for dangerous conditions and separating workers across the warehouse.  Under Maryland law, expert testimony as to degree of care is not required where the average juror would know that defendant's conduct was not that of a prudent person.  *Adams v. NVR Homes, Inc.*, 135 F.Supp. 2d 675, 711 (Dist. MD., 2001).  An expert is not needed to prove Defendant Brook's negligence in this matter.

Wherefore, it is respectfully requested that Defendant Brook's Motion for Summary Judgment is denied.

### b. Mr. Rebert Did Not Assume the Risk Of A Falling Steel Beam

Mr. Rebert incorporates by reference his argument as more fully laid-out in his Opposition to Defendant USA Rack Installations, LLC's  Motion for Summary Judgment.

### c. Negligence Per Se

Mr. Rebert respectfully withdraws his claims for negligence *per se*.

### d. Negligent Hiring/Training/Supervision

Mr. Rebert respectfully withdraws his claims for negligent hiring, negligent training, and negligent supervision.

    e. **Collateral Estoppel Is Inapplicable To Bar Mr. Rebert's Claims**

Mr. Rebert incorporates by reference his argument as more fully laid-out in his Opposition to Defendant USA Rack Installations, LLC's Motion for Summary Judgment.

### III.    CONCLUSION

WHEREFORE, Mr. Rebert respectfully requests that this Honorable Court deny Defendant Brook Furniture, Inc.'s Motion for Summary Judgment.

**A HEARING IS REQUESTED ON THIS MOTION**.

    By:    */s/ Benjamin T. Boscolo*
            Benjamin T. Boscolo (CPF: 870101008)
            bboscolo@chasenboscolo.com
            *Counsel for Mr. Rebert*

    By:    */s/ Ashley E. Strandjord*
            Ashley E. Strandjord (CPF: 1912050019)
            **CHASEN**BOSCOLO
            7852 Walker Drive, Suite 300
            Greenbelt, MD 20770
            Tel.: (301) 220-0050
            Fax: (301) 474-1230
            astrandjord@chasenboscolo.com
            *Counsel for Mr. Rebert*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAVID REBERT | : | |
| *Plaintiff*, | : | |
| vs. | : | Civil Action No.:8:20-cv-00067-GLS |
| | : | |
| BROOK FURNITURE RENTAL, INC, et al. | : | |
| | : | |
| *Defendants.* | : | |

**INDEX OF EXHIBITS IN SUPPORT OF DAVID REBERT'S OPPOSITION TO DEFENDANT BROOK FURNITURE RENTAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

Joint Exhibit 1– Deposition Testimony of Mr. Andrew Rupert

Joint Exhibit 2– Deposition Testimony of Mr. David Rebert

Joint Exhibit 8 – April 3, 2018 Opinion and Order of the Virginia Workers' Compensation Commission

Joint Exhibit 12– Deposition Testimony of USA Rack Installations, LLC, corporate representative

Joint Exhibit 13 – Deposition Testimony of Brook Furniture Rental, Inc., corporate representative

Joint Exhibit 15 – Policies of USA Rack Installations, LLC

Joint Exhibit 16 – Photograph

Joint Exhibit 17 – Photograph

Joint Exhibit 18 – Photograph

Joint Exhibit 19 – Report of Dr. Joel Fechter

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2021 a copy of the foregoing pleading was electronically filed with the CM/ECF system and e-mailed to:

Steven J. Parrott, Esq.
DeCaro Doran Siciliano Gallagher & DeBlasis, LLP
17251 Melford Blvd., Suite 200
Bowie, MD 20715
(301) 352-4991
sparrott@decarodoran.com
*Counsel for Defendant USA Rack Installations*

Courtney D. Thornton, Esq.
100 South Charles Street, Suite 1101-Tower II
Baltimore, MD 21201
(410) 752-0575
Courtney.thornton01@libertymutual.com
*Counsel for Defendant Brook Furniture Rental, Inc.*

                                                        */s/ Ashley E. Strandjord*
                                                        Ashley E. Strandjord